ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 14-3064

---

UNITED STATES OF AMERICA,                                    Appellee,

v.

HAROLD DORMAN,                                               Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BRIEF FOR APPELLANT
HAROLD DORMAN

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

TONY AXAM, JR.
Assistant Federal Public Defender
Counsel for Defendant-Appellant
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500
tony_axam@fd.org

District Court
Crim. No. 13-334 (RMC)

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), defendant-appellant, Harold Dorman, hereby states as follows:

### A.    Parties and Amici:

This appeal arises from a criminal conviction of defendant-appellant Harold Dorman by plaintiff-appellee, the United States of America.    There are no intervenors or amici.

### B.    Rulings Under Review:

This is an appeal from the judgment of the district court (the Honorable Rosemary Collyer), entered September 29, 2014, imposing sentence after conviction for unlawful possession with intent to distribute 100 grams or more of phencyclidine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iv); unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g); and using, carrying, and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c).    In this appeal, Mr. Dorman seeks review of the sufficiency of the evidence as well as the limitations on cross examination affecting his right to present a complete defense.    He also seeks review of the denial of his motion to suppress physical evidence.

### C.    Related Cases:

There are no related cases.    This case has not previously been before this Court.

## TABLE OF CONTENTS

PAGE

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . 1

CONSTITUTIONAL PROVISIONS, STATUES, AND RULES . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . 3

A.   Nature of the Case, Course of Proceedings, and
     Disposition in the Court Below . . . . . . . . . . . . . . 4

B.   Statement of Facts . . . . . . . . . . . . . . . . . . . . 5

     1.    Motion To Suppress Evidence . . . . . . . . . . . . . 5

     2.    Trial . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.   THE EVIDENCE WAS INSUFFICIENT TO SHOW THAT MR. DORMAN
     HAD CONSTRUCTIVE POSSESSION OF THE FIREARMS, AMMUNITION,
     AND PCP POLICE RECOVERED IN THIS CASE  . . . . . . . . . 19

     A.   Standard of Review  . . . . . . . . . . . . . . . . 19

     B.   The District Court Erred in Denying Mr. Dorman's
          Motion for Judgment of Acquittal  . . . . . . . . . 19

II.  THE DISTRICT COURT IMPROPERLY RESTRICTED MR. DORMAN'S
     CONFRONTATION CLAUSE RIGHTS AND THEREBY LIMITED HIS
     RIGHT TO PRESENT A COMPLETE DEFENSE  . . . . . . . . . . 29

     A.   Standard of Review  . . . . . . . . . . . . . . . . 29

     B.   The District Court Abused Its Discretion
          in Limiting Mr. Dorman's Questioning of
          Julianna Jennings . . . . . . . . . . . . . . . . . 29

i

III.  THE SEARCH WARRANT FAILED TO ESTABLISH PROBABLE CAUSE  .  35

    A.  Standard of Review  . . . . . . . . . . . . . . .  35

    B.  Given The Material Omission And Material Falsehood
        In The Affidavit In Support Of The Search Warrant,
        There Was No Substantial Basis For Deciding That
        The Search Warrant Established Probable Cause . . .  37

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . .  42

CERTIFICATE OF LENGTH

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

| CASES | PAGE |
|---|---|
| Berger v. California, 393 U.S. 314 (1969) . . . . . . . . . | 30 |
| *Chambers v. Mississippi, 410 U.S. 284 (1973) . . . . . . . | 30 |
| *Chapman v. California, 386 U.S. 18 (1967) . . . . . . . . | 34 |
| Crane v. Kentucky, 476 U.S. 683 (1986) . . . . . . . . . . | 30 |
| Davis v. Alaska, 415 U.S. 308 (1974) . . . . . . . . . . . | 29 |
| Delaware v. Van Arsdall, 475 U.S. 673 (1986) . . . . . . . | 29 |
| *Franks v. Delaware, 438 U.S. 154 (1978) . . . . . . . 3, 36, 37 |
| Golino v. New Haven, 950 F.2d 864 (2d Cir. 1991) . . . . . | 37 |
| Henderson v. United States, 135 S. Ct. 1780 (2015) . . . . | 20 |
| Illinois v. Gates, 462 U.S. 213 (1983) . . . . . . . . . . | 35 |
| In re Oliver, 333 U.S. 257 (1947) . . . . . . . . . . . . | 30 |
| Lindsey v. United States, 133 F.2d 368 (1942) . . . . . . | 29 |
| Minnesota v. Dickerson, 508 U.S. 366 (1993) . . . . . . . | 25 |
| Sullivan v. Louisiana, 508 U.S. 275 (1993) . . . . . . . . | 35 |
| United States v. Byfield, 928 F.2d 1163 (D.C. Cir. 1991) . . | 20 |
| *United States v. Colkley, 899 F.2d 297 (4th Cir. 1990) . . . . . . . . . . 36, 38, 40 |
| United States v. Dingle, 114 F.3d 307 (D.C. Cir. 1997) . . . | 20 |
| United States v. Fennell, 53 F.3d 1296 (D.C. Cir. 1995) . . | 19 |
| United States v. Foster, 982 F.2d 551 (D.C. Cir. 1993) . . . | 29 |
| United States v. Glover, 681 F.3d 411 (D.C. Cir. 2012) . . . | 36 |

---

* Authorities principally relied upon are marked with an asterisk.

iii

United States v. Green, 652 F. Supp. 1312 (D.D.C. 1987) . . 22

United States v. Green, 670 F.2d 1148 (D.C. Cir. 1981) . . . 34

United States v. Hodge, 19 F.3d 51 (D.C. Cir. 1994) . . . . 33

United States v. Johnson, 696 F.2d 115 (D.C. Cir. 1982) . . 37

United States v. Leon, 468 U.S. 897 (1984) . . . . 5, 11, 36, 38

United States v. Lucas, 67 F.3d 956 (D.C. Cir. 1995) . . . . 21

United States v. Michel, 446 F.3d 1122 (10th Cir. 2006) . . 27

United States v. Morgan, 581 F.2d 933 (D.C. Cir. 1978) . . . 35

United States v. Morris, 977 F.2d 617 (D.C. Cir. 1992) . 20, 27

United States v. Pardo, 636 F.2d 535 (D.C. Cir. 1980) . 19, 20

United States v. Pugh, 436 F.2d 222 (D.C. Cir. 1970) . . . . 29

United States v. Richardson, 861 F.2d 291 (D.C. Cir. 1988) . 37

United States v. Salamanca, 990 F.2d 629 (D.C. Cir. 1993) . 19

United States v. Spencer, 530 F.3d 1003 (D.C. Cir. 2008) 37, 40

United States v. Staten, 581 F.2d 878 (D.C. Cir. 1978) . . . 23

United States v. Stock, 948 F.2d 1299 (D.C. Cir. 1991) . . . 32

*United States v. Thorne,
    991 F.2d 1504 (D.C. Cir. 1993) . . . . . . . 21, 23, 24, 26

*United States v. Walker,
    99 F.3d 439 (D.C. Cir. 1996) . . . . . . . . . . . 23, 24

United States v. Warren, 42 F.3d 647 (D.C. Cir. 1994) . . . 35

United States v. Watkins, 519 F.2d 294 (D.C. Cir. 1975) 21, 24

United States v. Ziegler, 994 F.2d 845 (D.C. Cir. 1993) . . 22

_____

* Authorities principally relied upon are marked with an asterisk.

*<u>Washington v. Texas</u>, 388 U.S. 14 (1967) . . . . . . . . . . 30

<u>Wilson v. Russo</u>, 212 F.3d 781 (3d Cir. 2000) . . . . . . . . 38

### STATUTES AND OTHER AUTHORITIES

U.S. Const. - Fourth Amendment . . . . . . . . . . . . 2, 41, 42

U.S. Const. - Fifth Amendment  . . . . . . . . . . . . . . 1, 2

U.S. Const. - Sixth Amendment  . . . . . . 2, 18, 29, 30, 34, 42

18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 942(c) . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iv) . . . . . . . . . . . . 4

Fed. R. Evid. 611(b) . . . . . . . . . . . . . . . . . . . . 34

W. LaFave, <u>Search & Seizure</u> § 4.4 (Supp. 1982) . . . . . . . 37

---

\* Authorities principally relied upon are marked with an asterisk.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 14-3064

UNITED STATES OF AMERICA,                               Appellee,

v.

HAROLD DORMAN,                                         Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLANT

JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C.

§ 3231.  A timely notice of appeal having been filed, this Court has

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

The Fifth Amendment to the Constitution of the United States of

America provides:

> No person shall be held to answer for a capital, or
> otherwise infamous crime, unless on a presentment or
> indictment of a Grand Jury, except in cases arising in
> the land or naval forces, or in the Militia, when in
> actual service in time of War or public danger; nor shall
> any person be subject for the same offence to be twice

> put in jeopardy of life or limb; nor shall be compelled
> in any criminal case to be a witness against himself, nor
> be deprived of life, liberty, or property, without due
> process of law; nor shall private property be taken for
> public use, without just compensation.

U.S. Const. amend. V.

The Sixth Amendment to the Constitution of the United States of

America provides:

> In all criminal prosecutions, the accused shall enjoy the
> right to a speedy and public trial, by an impartial jury
> of the State and district wherein the crime shall have
> been committed, which district shall have been previously
> ascertained by law, and to be informed of the nature and
> cause of the accusation; to be confronted with the
> witnesses against him; to have compulsory process for
> obtaining witnesses in his favor, and to have the
> Assistance of Counsel for his defence.

U.S. Const. amend. VI.

The Fourth Amendment to the Constitution of the United States of

America provides:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> Warrants shall issue, but upon probable cause, supported
> by Oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.

Pursuant to Federal Rule of Appellate Procedure 28(f) and

Circuit Rule 28(a)(5), any other pertinent constitutional provisions,

statutes, and rules are set forth in the Addendum to this brief.

2

## ISSUES PRESENTED FOR REVIEW

I.    Whether the evidence was sufficient to find Mr. Dorman guilty of offenses that required the government to prove his constructive possession of firearms, ammunition, and PCP, where there was no evidence that Mr. Dorman had knowledge of these items.

II.   Whether the district court erroneously restricted Mr. Dorman's cross examination concerning people who had access to 2317 Chester Street so as to limit Mr. Dorman's defense that someone besides him possessed the firearms, ammunition, and PCP police discovered at that location.

III.  Whether the district court erred in holding that the search warrant in this case established probable cause under Franks v. Delaware where the affidavit in support of the warrant (1) omitted the fact that the robbery victim of the robbery under investigation did not positively identify Mr. Dorman as a suspect who fled in a rental car, and (2) included an allegation that Mr. Dorman was wanted for a separate robbery, but falsely claimed a rental car was involved.

## STATEMENT OF FACTS[1]

---

[1]    "Appx." refers to the Appendix of Appellant filed with this brief.   Relevant transcripts are contained in the appendices behind tabs marked with the date of the proceeding and are cited by date and original page number (e.g., "4/28/09:14").

3

A.  **Nature of the Case, Course of Proceedings, and Disposition in the Court Below**

On December 17, 2013, a federal grand jury returned a three-count indictment charging Harold Dorman with Unlawful Possession with Intent to Distribute 100 Grams or More of Phencyclidine (Count One) in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iv); Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (Count Two) in violation of 18 U.S.C. § 922(g); and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense (Count Three) in violation of 18 U.S.C. § 924(c). Appx. 13-14. The indictment also contained an allegation seeking the forfeiture of firearms and ammunition identified in the preceding counts. Id. On July 8, 2014, Counts Two and Three of the Indictment were amended to remove reference to a firearm about which the government did not plan to present evidence. 7/8/14:125.

After a motions hearing on June 25, 2014, Mr. Dorman's jury trial commenced on July 8, 2014. On July 11, 2014, the jury returned guilty verdicts on all counts. On September 22, 2014, Mr. Dorman was sentenced to 70 months' incarceration on Count One, to run concurrently with 70 months' incarceration on Count Two, followed by 60 months' incarceration on Count Three, to run consecutively to Counts One and Two, for a total period of incarceration of 130 months. Appx. 72-75. Additionally, the district court imposed 60

4

months' supervised release.  Id.  Mr. Dorman filed a timely notice of appeal on September 23, 2014.   Appx. 71.

### B.    Statement of Facts

#### 1.    Motion To Suppress Evidence

On February 10, 2013, Mr. Dorman filed a motion to suppress in which he argued that the search warrant executed on October 17, 2013, at 2317 Chester Street, Southeast, Washington, D.C., was not supported by probable cause and did not survive the good faith exception of United States v. Leon, 468 U.S. 897 (1984).  Appx. 16. Additionally, Mr. Dorman submitted that, without a warrant, the government obtained GPS information for a car that Mr. Dorman was driving which led to the search of 2317 Chester Street.  Appx. 21A. Mr. Dorman sought suppression of all evidence seized and derived as a result of the execution of the search warrant.

The government countered that the affidavit established probable cause and, in any event, was properly executed so that any deficiency was irrelevant under the good faith exception of Leon.  Appx. 22-33.

The affidavit in support of the search warrant sought permission to search 2317 Chester Street, Southeast, Washington D.C. as well as a white Dodge Charger bearing Maryland tag 7BA2263 for evidence related to the October 12, 2013, robbery of the Kay Jewelers at the Columbia Mall in Maryland.  Appx. 31.  The affidavit alleged that the suspect was "a black male, approximately 20-30 years of age with

5

short hair and left ear pierced, wearing a black long sleeve athletic
style shirt, blue jeans, and black sneakers" and that he had fled in
a white Dodge Charger displaying a Maryland license plate of 7BA2263.
Appx. 32. According to that affidavit, the car had been rented by
Harold Eugene Dorman (Mr. Dorman, Sr.), who was the father of Harold
Antwan Dorman (Mr. Dorman). Appx. 31-32. The affidavit stated that
the Charger was equipped with a GPS that reflected its location on
October 14, 2013, at 2321 Chester Street, Southeast, Washington, D.C.
Appx. 31. Law enforcement databases listed Mr. Dorman's address as
2317 Chester Street, Southeast, Washington, D.C. and also reflected
that Mr. Dorman had charges pending in York, Pennsylvania for
attempted armed robbery of a jewelry store. Appx. 32. Mr. Dorman
was described in a law enforcement database with a birthdate of
7/31/86, six feet tall, and 160 pounds. Appx. 32. The affidavit
alleged that a rental car was used during the course of the
Pennsylvania robbery. Appx. 32. Finally, the affidavit noted that
on October 16, 2013, law enforcement had conducted surveillance at
2317 Chester Street, and had seen the Dodge Charger parked across the
street from that location. Appx. 32.

On June 25, 2014, the district court held a hearing on Mr.
Dorman's suppression motion. Prior to the start of testimony,
counsel for Mr. Dorman indicated that he would challenge statements
in the affidavit linking Mr. Dorman to a rental car that was used in

6

the Kay Jewelers robbery that was the focus for probable cause. 6/25/14:5-6. Also at the start of the hearing, the government acknowledged that the car used in the Pennsylvania robbery had not been rented, but was instead borrowed from a third party. 6/25/14:87.

The government presented FBI Special Agent Catherine Hanna. 6/25/14:8. Agent Hanna testified that she had known of Mr. Dorman for several years before his arrest in this matter, but had only met him for the first time in October 2013. 6/25/14:9. According to Agent Hanna, Mr. Dorman lived at 2317 Chester Street, Southeast, and also used 142 Yuma Street Southeast, Washington, D.C. as his address. 6/25/14:10-11. While on surveillance on a separate investigation in Southeast D.C., Agent Hanna had seen a white Dodge Charger and noted its license place. 6/25/14:11. She subsequently learned that the car had been rented by Harold Dorman, Sr. and that he was the only person authorized to drive it. 6/25/14:12.

According to Agent Hanna, on October 13, 2013, Howard County law enforcement contacted the FBI and reported that a car with license plates that matched the white Dodge Charger had been used in the robbery of a Kay Jewelers. 6/25/14:12. The jewelry store robbery victim described the suspect as a six foot tall black male in his 20's with short hair. 6/25/14:14. Agent Hanna "felt" as though this description matched Mr. Dorman. 6/25/14:15. Agent Hanna testified that a Howard County detective named James Zammillo told her that the

7

Kay Jewelers robbery victim was shown a photo array containing a
picture of Mr. Dorman, but did not make a positive identification.
6/25/14:43 (Agent Hanna stating, "I wasn't present for [the photo
array] but my conversation with Detective Zammillo is that there was
a photo array presented to the victim and she was not able to
identify. I think she went between two photos.").

Agent Hanna separately learned that Mr. Dorman had a warrant for
his arrest in Montgomery County Maryland. 6/25/14:24. On October
17, 2013, Officers used GPS information provided by the car rental
agency to learn the location of the Dodge Charger and proceeded to
that location (it was in Maryland at the time) where they arrested
Mr. Dorman on the outstanding Maryland warrant. 6/25/14:26. The
arrest took place prior to execution of the search warrant at 2317
Chester Street. Id.

Agent Hanna was present for the search of 2317 Chester Street.
When law enforcement arrived at that location, Mr. Dorman's mother
was present along with two men who had been replacing the carpet at
the residence. 6/25/14:27. Agent Hanna allowed the workers to leave
and proceeded to search the house. Police recovered two guns,
phencyclidine, and mail matter in Mr. Dorman's name. 6/25/14:29.

Detective Scott Brown was the affiant who prepared the search
warrant. 6/25/14:88. He testified that on October 16, 2013,
Detective Zammillo told him that Howard County law enforcement had

8

shown a photo array to the Kay Jewelers robbery victim and she did not identify anyone, but she noted that the photo of Mr. Dorman was "possibly" the person who robbed Kay Jewelers.  6/25/14:91. Detective Brown did not include any information concerning the photo array and non-identification in the search warrant affidavit because, according to him, "it didn't help" and "[i]t didn't hurt." 6/25/14:91.  He denied that he had any ulterior reason for not including it.  6/25/14:92.

Counsel for Mr. Dorman argued the search warrant was not valid because it failed to establish probable cause to believe that Mr. Dorman was the person who robbed the Kay Jewelers.  6/25/14:57-59. Moreover, counsel argued that the failure of the robbery victim to identify Mr. Dorman was a material fact that should have been included in the warrant affidavit because it altogether negated probable cause that Mr. Dorman was involved in the robbery. 6/25/14:68.  Counsel contended that because Detective Brown testified that the victim said that the photo of Mr. Dorman was "possibly" the photo of the robbery suspect and Agent Hanna testified that the victim did not make an identification, the government should have been required to call Detective Zammillo to clarify the discrepancy. 6/25/14:109-10.  The district court denied this request as beyond the scope of challenging probable cause in the warrant.  6/25/14:110-11.

9

The court ruled that information about the photo array was only relevant insofar as it could show that the search warrant affiant recklessly, knowingly, or purposely omitted material facts from the search warrant and that the defense had failed to carry its burden to show such an omission.  6/25/14:97-98, 107, 111.  According to the court, the testimony of Detective Brown and Agent Hanna was "very close together."  6/25/14:114 ("They are saying approximately the same thing, i.e., the witness made no dependable identification.").  The court held that notwithstanding the non-identification of Mr. Dorman as the person who robbed the Kay Jewelers or the mistaken assertion in the affidavit that a rental car was used in the York, Pennsylvania robbery, the affidavit in support of the search warrant was "otherwise sufficient" and provided a reasonable basis for probable cause to search 2317 Chester Street.  6/25/14:123, 125.

Specifically, the court found that the Dodge Charger parked near 2317 Chester Street on October 16, 2013, matched the car used in the robbery of the Kay Jewelers.  6/25/14:120, 122.  That address was listed in police databases as a residence associated with Mr. Dorman.  6/25/14:122.  The court also found that the person who entered the Dodge Charger after the robbery had an appearance that could have been Mr. Dorman.  6/25/14:121, 124.  Also, the Charger had been rented by Mr. Dorman's father.  6/25/14:123.  Finally, the court

10

found that Mr. Dorman had charges pending in Pennsylvania for the robbery of a jewelry store.  6/25/14:125.

Ultimately, the district found that the facts recited in the search warrant affidavit, in their totality, provided a reasonable basis for probable cause to search 2317 Chester Street.  6/25/14:125. The court held that even if the search warrant were invalid for some reason, the search was nevertheless legal under United States v. Leon, 468 U.S. 897 (1984), because the officers executing the warrant acted upon it in good faith.  6/25/14:125-26.

The court also ruled that the person who rented the car agreed that the rental company would be able to track the car through the GPS and therefore neither the renter nor Mr. Dorman had a reasonable expectation of privacy that was violated when the rental agency tracked the car through the GPS and provided that information to law enforcement.  6/25/14:127-28.  As a result, the court denied suppression of the evidence recovered through use of that GPS information.  6/25/14:128.

### 2.    Trial

The government called Agent Hanna, the seizing officer, to testify regarding execution of the search warrant.  7/8/14:160, 163. She testified that Mr. Dorman was not present during the execution of the warrant.  7/8/14:160.    When she arrived at 2317 Chester Street at 2:50 p.m., Mr. Dorman's mother, Juliana Jennings, was in the front

11

yard.  Agent Hanna and 12 other officers cleared the house of

occupants.  7/8/14:42.  Officers allowed two men doing renovations on

the house to leave.  7/8/14:43-44.

Officers recovered a Glock firearm with a 30-round magazine from

between the cushions of the couch in the main floor living room.

7/8/14:173.  Agent Hanna testified that she had actually been sitting

on the couch for 30 minutes prior to searching between its cushions,

but had not realized a gun was there.  7/8/14:173.  In the same room,

officers recovered a one ounce vial of PCP as well as numerous empty

glass vials and a digital scale.  7/8/14:179.  According to Agent

Hanna, the PCP vial was found either inside or behind a flower vase

sitting on the floor beside the television, but was not in "plain

view."  7/8/14:179; 7/9/14:37, 55-56.

On the steps leading to the basement, was an empty Glock firearm

box.  7/8/14:190.  Agent Hanna described the basement as having a

living area with a bed and a laundry room.  7/8/14:165.  The basement

was not capable of being locked off from the main floor and had an

exit outside at the rear.  7/9/14:61, 74.

In the laundry area, officers recovered a 15.2 ounce Tropicana

bottle filled with PCP.  7/9/14:10.  The bottle was on the floor on

the right side of the washing machine and not "necessarily" visible

from the front upon approach.  7/9/14:9.  Also in the laundry area,

police found a plastic bin containing dozens of prescription pill

12

bottles from which they recovered fingerprints, including prints that matched a men named Khalid Davis and Ibrahim Ahmedadam Mohamed. 7/9/14:11-12; 30-31.  There was no testimony regarding how these men came to have fingerprints available for comparison in a law enforcement database.

Agent Hanna testified that the bedroom in the basement had a television tuned to ESPN, men's sneakers and boots, male clothing, and court papers in Mr. Dorman's name.  7/9/14:13-15, 17.  The bedroom also had a sketch of a football player with the name "Dorman" printed on his jersey.  7/9/14:18.  Police recovered a Ruger pistol from between the box spring and the mattress of the bed.  7/9/14:19. Also in the bedroom, police found a blue Rubbermaid bin containing a digital scale, Ziploc baggies, and .40 caliber ammunition. 7/9/14:25-27.

Police submitted the Ruger and Glock for fingerprint analysis, but no prints of value were discovered.  7/9/14:28.  The firearms and pill bottles were submitted for DNA analysis, but there was insufficient material from which to make an identification. 7/9/14:50, 54.  No DNA analysis was performed on the PCP bottles. 7/9/14:70.  Agent Hanna stated there was no fingerprint or DNA evidence connecting Mr. Dorman to 2317 Chester Street.  7/9/14:85.

The government also called Juliana Jennings, Mr. Dorman's mother, who testified that besides the two workers who left as police

13

arrived, there was no one else in the house at the time the warrant
was executed.  7/9/14:93, 96.  Mr. Dorman had been present in the
house the night before around 6-7 p.m.  7/9/14:98.  Although Mr.
Dorman had access to the entire house, he did not always stay there,
but stayed with his girlfriends, or with mothers of his children, or
with his grandmother.  7/9/14:99.  When Mr. Dorman stayed with Ms.
Jennings, he slept in different areas, but slept primarily in the
basement "in his room sometimes."  7/9/14:98-99.  Ms. Jennings stated
that she and Mr. Dorman each had a key to the basement bedroom, but
that the bedroom was "open all the time."  7/9/14:124, 151.
According to Ms. Jennings, Mr. Dorman kept some of his clothes at the
house.  7/9/14:104.  The government introduced Ms. Jennings's grand
jury testimony in which she had stated that Mr. Dorman used her house
as his "home base" where he kept the majority of his clothes and
occupied the entire basement where most of the items there were his.
7/9/14:105-109.

Ms. Jennings testified that she had last used the laundry room
one week before the search.  7/9/14:110.  She had never seen the gun
box on the steps, the scale and Ziplocs, or the gun that was
recovered from the couch in the living room.  7/9/14:110, 119.
Though she admitted that some of the items in the basement were Mr.
Dorman's, she was unable to identify all of the clothes and shoes in
the room as belonging to him as she did not usually go in there.

14

7/9/14:123-24.  Ms. Jennings initially testified that besides herself and Mr. Dorman, the only others she remembered having keys to the house were Mr. Dorman, Sr. and her tenant, Mr. Hill. 7/9/14:133.

Ms. Jennings admitted that when police first asked her whose gun was in the couch, she responded that the police should question the "kids," and that she was not referring to her grandkids.  7/9/14:136-37.  She also stated that while the search was taking place, Mr. Dorman called and she expressed anger towards him.  7/9/14:137.  Ms. Jennings was upset because she did not know who owned the guns and drugs.  7/9/14:137-38.  She stated they were not hers or Mr. Hill's. 7/9/14:138.  As Ms. Jennings spoke to Mr. Dorman on the phone, he said "Sorry, calm down."  7/9/14:139.

During cross examination, Ms. Jennings remembered that her boyfriend's son, Seth, Jr. also had a key to her house.  7/9/12:147. The court sustained government's objection to questions regarding Seth, Jr., ruling that they were too vague because they did not isolate a specific period in time when he could have had access to the house.  7/9/14:147-48.

Ms. Jennings testified that Seth, Jr. and Seth, Sr. each sometimes did laundry at her house and that Mr. Hill also used the laundry area.  7/9/14:150, 152.  As counsel for Mr. Dorman sought to establish the time frame concerning the presence of Seth, Sr. doing laundry in the house, the court cut off questioning.  7/9/14:150.

15

Counsel for Mr. Dorman asked, "Ma'am did you ever know any other
individuals to have access to your apartment?"  The Court did not
allow the witness to answer this question.  7/9/14:150.

Corrie Mellot, an FBI forensic fingerprint analyst, analyzed the
firearms and magazines, but did not recover fingerprints.
7/9/14:160, 167.  She did not test the bullets, scales, or Ziploc
baggies for fingerprints.  7/9/14:182, 184.

Jacqueline Slebrch, an FBI latent fingerprint analyst, processed
the pill bottles and stated that she recovered prints matching two
law enforcement officers involved in the search, but also recovered
prints that matched Ibrahim Ahmedadam Mohamed and Khalid Davis.
7/9/14:195.

Alvin Cardinal, a drug expert, explained that someone with 16-18
ounces of PCP would likely sell it to others, and would be considered
a mid-level to upper-level PCP dealer.  7/10/14:21, 36.  He also
testified that drug dealers usually protect themselves with firearms
stored near their drugs.  7/9/14:47.

Chemist Erika Derks testified that the liquid in the one ounce
vial amounted to 19 grams of PCP and had a purity of 14.7% and the
liquid in the Tropicana bottled amounted to 386.9 grams of PCP and
had a purity of 10.9%.  7/9/14:64, 72, 74.

16

Prior to resting its case, the government moved portions of Ms. Jennings's grand jury testimony into evidence without objection. 7/9/14:86 (Gov't Ex. 141).

The court instructed the jury regarding the significance of stipulations as evidence and subsequently read the parties' stipulations concerning Mr. Dorman's status as a person previously convicted of a felony; the manufacture of the recovered firearms outside of D.C. (interstate nexus); and the guns meeting the definition of "firearm" and bullets meeting the definition of "ammunition" under the United States Code. 7/9/14:90-93.

Mr. Dorman moved for judgment of acquittal given that there was insufficient evidence linking him to the drugs and guns recovered and many people had access to the areas of the house where these items were discovered. 7/9/14:88. The court denied the motion. 7/9/14:97.

The defense presented one witness, Cleaven Hill, who had previously been referred to as Cleveland Hill. 7/10/14:102. Mr. Hill testified that he had lived at 2317 Chester Street with Ms. Jennings since April 2013. 7/10/14:102. He was friends with Mr. Dorman, Sr. and also knew Mr. Dorman. 7/10/14:103. On at least two occasions, Mr. Hill had let people into the house at Mr. Dorman's request while Mr. Dorman was not present. 7/10/14:104-05. Mr. Hill had never seen guns or drugs in the house and had never seen Mr.

17

Dorman in possession of the guns or PCP police recovered from the
house.  7/10/14:118-19.

## SUMMARY OF ARGUMENT

The evidence was insufficient to establish that Appellant Harold
Dorman had possession of the firearms, ammunition, and drugs police
recovered during the execution of the search warrant.  Mr. Dorman was
not present when these items were recovered and it was unreasonable
to infer beyond a reasonable doubt that he constructively possessed
these items beyond a reasonable doubt given that they were discovered
in areas of the house that were accessible to many individuals.  Mr.
Dorman is entitled to judgment of acquittal on all charges.

In addition, the district court erred as a matter of law by
restricting Mr. Dorman's defense that another person with access to
2317 Chester Street possessed the firearms, ammunition, and drugs
recovered from there.  Specifically, the court limited Mr. Dorman's
questioning regarding who else Julianna Jennings had permitted to
come and go from the premises and who else others had permitted to
enter the house.  These limitations amounted to a violation of Mr.
Dorman's Sixth Amendment right to present a complete defense and
require reversal of his conviction and a new trial.

The district court also erred in denying Mr. Dorman's motion to
suppress evidence.  The search warrant omitted important facts
concerning the non-identification of Mr. Dorman as the robbery

18

suspect linked to the Dodge Charger that was the primary connection

to the location to be searched.  Also, the affiant misrepresented

that Mr. Dorman was wanted for a separate robbery in which a rental

car was used to get away, when in fact, the car used in the separate

robbery was not a rental car.  Given the material omission and

misrepresentation by the affiant in this case, the district court

should have found that probable cause did not otherwise exist and

should have granted Mr. Dorman's motion to suppress evidence.

ARGUMENT

I.   **THE EVIDENCE WAS INSUFFICIENT TO SHOW THAT MR. DORMAN HAD CONSTRUCTIVE POSSESSION OF THE FIREARMS, AMMUNITION, AND PCP POLICE RECOVERED IN THIS CASE.**

   A.   Standard of Review

This Court reviews challenges to the sufficiency of the evidence

de novo, asking whether there is "sufficient evidence upon which a

reasonable juror could find guilt beyond a reasonable doubt."  See

United States v. Fennell, 53 F.3d 1296, 1298 (D.C. Cir. 1995); United

States v. Pardo, 636 F.2d 535, 547 (D.C. Cir. 1980).  The Court "must

view the evidence in the light most favorable to the Government,

drawing all legitimate inferences from that evidence."  Id.  While

"[a] jury is entitled to draw a vast range of reasonable inferences

from the evidence, [it] may not base a verdict on mere speculation."

United States v. Salamanca, 990 F.2d 629, 638 (D.C. Cir. 1993).

   B.   **The District Court Erred in Denying Mr. Dorman's Motion for Judgment of Acquittal.**

19

For each offense with which Mr. Dorman was charged, the government was required to prove an element of possession by Mr. Dorman.   Specifically, for Counts 1 and 3, the government was required to prove that Mr. Dorman possessed either of the two firearms (loaded with ammunition); or for Count 1 separately, that he possessed ammunition (in the plastic bin); and for Count 2, that he possessed either of the two separate bottles of PCP recovered inside 2317 Chester Street.

The government presented no evidence that Mr. Dorman had actual possession of any of these items at any time.   Therefore, the government was required to prove Mr. Dorman's constructive possession of them through evidence that he had the "power and intent to exercise control over" them.   Henderson v. United States, 135 S. Ct. 1780, 1784 (2015); see also United States v. Byfield, 928 F.2d 1163, 1166 (D.C. Cir. 1991) (constructive possession characterized by defendant's knowledge of, and ability to exercise dominion and control over item).

Proximity or accessibility to the contraband alone is insufficient to infer possession.   See, e.g., United States v. Morris, 977 F.2d 617, 619-20 (D.C. Cir. 1992).   Rather, this Court has repeatedly stressed that "[t]here must be some action, some word, or some conduct" linking the individual to the contraband.   Pardo, 636 F.2d at 549; see also United States v. Dingle, 114 F.3d 307, 310

(D.C. Cir. 1997); United States v. Lucas, 67 F.3d 956, 959 (D.C. Cir. 1995); United States v. Thorne, 991 F.2d 1504, 1510 (D.C. Cir. 1993); United States v. Watkins, 519 F.2d 294 (D.C. Cir. 1975) (government must prove knowledge and ability to control). No such proof exists in this case.

One gun was discovered hidden under a seat cushion of a couch in the living room on the first floor of the house. 7/9/14:48. A second gun was discovered between the mattress and the box spring of a room in the basement with just the handle of the gun showing. 7/9/14:19. Ammunition was discovered inside a blue plastic bin with items stacked on top of it in the basement bedroom. 7/9/14:25. One quantity of PCP was discovered in a Tropicana bottle on the floor against the side of the washing machine in the basement and a second quantity of PCP was discovered inside a one ounce vial behind or inside of a flower vase behind the television in the living room of the first floor. 7/9/14:55, 69-70.

Mr. Dorman was not the lessee or owner of 2317 Chester Street and there was no mail addressed to him at that address. On the contrary, there was a document in the basement bedroom listing 142 Yuma Street, Southeast, Washington, D.C., as Mr. Dorman's address. 7/9/14:21. Ms. Jennings testified that Mr. Dorman stayed at many different locations and that he actually lived with his girlfriends, the mothers of his children, and his grandmother. 7/9/14:99.

21

Moreover, there was no evidence that all of the items in the basement belonged to Mr. Dorman, or how his belongings had come to rest in the basement, or how long the seized items had been there. As to who owned some of the other items in the basement, Ms. Jennings testified that due to renovations of her house, she had taken everything from the upstairs bedroom and put it in the basement. 7/9/14:109. Thus, at best, the evidence demonstrated only that Mr. Dorman had access to 2317 Chester Street, had some of his belongings in the basement bedroom of the house, and had been present there the day before the search.

The law does not presume that an occasional or even frequent occupant of premises possesses everything contained at those premises. In United States v. Ziegler, 994 F.2d 845 (D.C. Cir. 1993), this Court reversed the defendant's conviction in a search warrant case despite the defendant's presence at, and close connection to, the premises. The Court noted that "those who spend considerable time in another's apartment, even those who 'live' there, do not for that reason possess everything on the premises." Id. at 848.

Indeed, courts have long recognized that a "gross injustice would result if all residents in a household would constructively be found guilty of possessing the contraband actually owned by only one of the residents." United States v. Green, 652 F. Supp. 1312, 1314

(D.D.C. 1987); see also Thorne, 997 F.2d at 1510-11.   Thus, where
contraband is found in a place occupied by more than one person, the
evidence must support a belief that "the accused had a substantial
voice vis-à-vis" the contraband, United States v. Staten, 581 F.2d
878, 884 (D.C. Cir. 1978), or, equivalently, "some appreciable
ability to guide [the contraband's] destiny," id. at 883.   The
government presented no such evidence against Mr. Dorman regarding
any of the evidence police recovered in this case.

     United States v. Walker, 99 F.3d 439 (D.C. Cir. 1996),
emphasizes that to show constructive possession, the government must
prove a defendant's knowledge and an ability to control the item in
question.   In Walker, this Court found sufficient evidence of the
defendant's constructive possession of drugs where the defendant
admitted that he lived at the address where the drugs were found and
his name was listed on the lease.   Importantly, the Court in Walker
observed that drugs were discovered hidden in a bedroom that the
defendant referred to as his and that his mother said belonged to
him.   Id. at 441.   This Court noted that the bedroom where the drugs
were found contained the defendant's identification, a poster-sized
photo of him on the wall, and personal papers with his name.   Id.
However, these facts did not alone establish the defendant's
constructive possession.   Id.   Rather, the Court held that the
government proved the defendant's ability to control and knowledge

foremost because it proved that the defendant was inside one of the
bedrooms of the house at the time of the search, he was surrounded by
drug paraphernalia "in the open," and there were other drugs "all
over the floor" of a third bedroom.  Id.

In the immediate case, in contrast to the defendant in Walker,
Mr. Dorman was not present inside 2317 Chester Street when evidence
of a crime was found there, and hence, was not surrounded by drugs,
drug paraphernalia, guns, or ammunition that might have indicated his
knowledge of these items in the home. In fact, Mr. Dorman had not
been seen inside the house since the previous day. In this regard,
Mr. Dorman's case is more similar to United States v. Thorne, 991
F.2d at 1510, where the defendant shared a bedroom with four others
where drugs and drug paraphernalia were found in a closet. This
Court held that the evidence was insufficient to support an inference
that the defendant possessed the drugs. The Court emphasized that
the drugs were not in plain view so there was no reason to conclude
that the defendant knew of them. Likewise, in United States v.
Watkins, 519 F.2d 294 (D.C. Cir. 1975), the Court reversed a drug
conviction for insufficiency where the evidence consisted of the
defendant's presence in the room where police found concealed drugs,
despite that police also found books containing the defendant's name.

In the immediate case, the PCP was not "in the open," but was in
discreet locations – inside or behind a flower vase and at the base

24

of the washing machine - in common areas of the house and not in a
room particularly associated with Mr. Dorman. Indeed, Agent Hanna
testified that she "could have sat there [on the couch in the living
room] another two weeks and not known that bottle [of PCP] was there
had [she] not been looking for it." 7/9/14:55. She also said that
the Tropicana PCP bottle on the floor in the basement was "not
something that you would necessarily see as you are approaching the
washing machine." 7/09/14:69-70. Also, the PCP was stored in a
Tropicana bottle in one instance and small glass vial in the other -
containers that did not necessarily suggest the illicit nature of
their contents. Thus, even if the drugs had been in the open, they
were not in containers that immediately identified their contents as
contraband. Cf. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)
(crucial feature of plain view doctrine is that incriminating
character of object is "immediately apparent"). In fact, Ms.
Jennings and Mr. Hill, who had each been in the house day of the
police search testified that they had not seen drugs in the house at
all. 7/9/14:153, 157-58; 7/10 14:117.

Given that the drugs in this case were not openly strewn about
so that their presence was immediately apparent to people in the
house, there was no evidence to imply Mr. Dorman's knowledge of them
and no evidence from which to find Mr. Dorman guilty of possession
with intent to distribute PCP as charged in Count 1. As a

25

consequence, the evidence necessarily was insufficient to support Mr.
Dorman's conviction for possessing a firearm during a drug
trafficking offense in Count 3.

The evidence was likewise insufficient to find Mr. Dorman
possessed the guns and ammunition police recovered.  There was no
evidence that Mr. Dorman had knowledge of the gun hidden in the
cushions of the couch in the common living area of the house where
Agent Hanna had actually been seated for 30 minutes prior to
discovering it.  7/8/14:173.  And, even assuming arguendo, that an
inference could arise that Mr. Dorman constructively possessed items
in the basement bedroom because it was identified as his room, as in
Thorne, the evidence showed that others in the house were not
restricted from access to this room.  7/9/14:61, 74, 124, 151.  As
result, the government was required to show Mr. Dorman had "knowing
dominion and control" over the gun and ammunition in this room.
Thorne, 997 F.2d at 1511.  The government failed to carry this
burden.  In fact, given that the gun was between the mattress and box
spring of the bed, the government did not show that its presence was
immediately apparent so as infer knowledge of its existence at all.
7/9/14:19.  Similarly, because the ammunition was not in plain view,
but was found inside of a blue plastic bin with more items stacked on
top of the bin itself, there was no basis for inferring Mr. Dorman's
knowledge of it.  7/9/14:25.  In sum, neither of the two guns, nor

26

the ammunition were "in the open" or in areas under the exclusive

dominion and control of Mr. Dorman so as to establish a basis for

inferring Mr. Dorman's possession of them.

"Jurors are not permitted to convict a defendant based on

speculation or mere suspicion . . . and caution must be taken that

the conviction not be obtained by piling inference on inference. . .

A jury will not be allowed to engage in a degree of speculation and

conjecture that renders its finding a guess or mere possibility."

United States v. Michel, 446 F.3d 1122, 1127-28 (10th Cir. 2006).  On

the evidence in this case, it was pure speculation and nothing more

that led the jurors to conclude that Mr. Dorman had knowledge of the

guns, ammunition, and drugs police found inside 2317 Chester Street.

Although Mr. Dorman did not make a statement claiming to have

lived at 2317 Chester Street or to have knowledge or control over the

drugs and guns and ammunition found there, compare, Morris, 977 F.2d

at 620, the government implied that Mr. Dorman's apology to his

mother while she was upset that the police were searching her house

was an admission of his possession.  The problem with this reasoning

is that the government never established what Mr. Dorman said he was

sorry about.  Ms. Jennings testified that she "laid out Mr. Dorman"

while the police were searching her house, but she did not state what

she said to Mr. Dorman that prompted his response, "Sorry Ma" or

"Sorry, calm down."  7/9/14:139.  The record does not reflect that

27

Ms. Jennings told Mr. Dorman what police had discovered or where they discovered it. When counsel asked Ms. Jennings what she interpreted Mr. Dorman to mean by his apology, she said she thought he was sorry that the police had upset her and searched her house and he wanted her to calm down.  7/9/14:143-44.  It would be pure speculation to assume that Mr. Dorman's apology to his mother was an admission that the drugs and guns the police found belonged to him, given that there was no evidence that he was informed of, or confronted with, the discovery of these items.

In sum, there was simply no evidence from which to infer Mr. Dorman's knowledge of the guns, ammunition, or PCP police recovered from 2317 Chester Street.  For this reason, Mr. Dorman's convictions for unlawful possession with intent to distribute 100 grams or more of phencyclidine; unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year; and using, carrying, and possessing a firearm during a drug trafficking offense should be reversed for insufficient evidence.[2]

---

[2]    The government did not present evidence that Mr. Dorman used or carried a firearm during a drug trafficking offense, but instead argued that he possessed a firearm during his constructive possession with intent to distribute the recovered PCP as alleged in Count 1 of the indictment.

II.  **THE DISTRICT COURT IMPROPERLY RESTRICTED MR. DORMAN'S CONFRONTATION CLAUSE RIGHTS AND THEREBY LIMITED HIS RIGHT TO PRESENT A COMPLETE DEFENSE**

A.  Standard of Review

Where a defendant is prevented from engaging in otherwise appropriate cross-examination designed to expose "facts from which jurors could appropriately draw inferences" that create doubts relating to the government's case, Davis v. Alaska, 415 U.S. 308, 318 (1974), the Confrontation Clause of the Sixth Amendment is violated and reversal is required unless the government can prove that the error was harmless.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

B.  **The District Court Abused Its Discretion In Limiting Mr. Dorman's Questioning of Julianna Jennings.**

District courts have "broad discretion to place reasonable limits on the cross-examination of witnesses."  United States v. Foster, 982 F.2d 551, 553 (D.C. Cir. 1993).  Thus, while a trial court "can restrict cross-examination based on relevancy, materiality, or prejudice – or on new matters first broached on cross – the trial judge may not restrict the right of cross examination by the defense on a matter brought out before the jury on direct until that right has been 'substantially and fairly exercised.'"  United States v. Pugh, 436 F.2d 222, 225 (D.C. Cir. 1970) (citing Lindsey v. United States, 133 F.2d 368 (D.C. Cir. 1942)).  Indeed, the "denial" or "significant diminution" of a defendant's right to cross examine

29

"calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." Chambers v. Mississippi, 410 U.S. 284, 295 (1973) (citing Berger v. California, 393 U.S. 314, 315 (1969)).

In Mr. Dorman's case, the district court's limitation of Mr. Dorman's cross examination of Ms. Jennings did not serve a legitimate interest but instead prejudiced Mr. Dorman's fundamental right to present a defense. See In re Oliver, 333 U.S. 257 (1947) (holding defendant has a fundamental right to present a defense); Washington v. Texas, 388 U.S. 14, 19 (1967) (defendant has Sixth Amendment and due process rights to present a defense); Crane v. Kentucky, 476 U.S. 683, 690 (1986) (recognizing that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense"). The court effectively curtailed Mr. Dorman's right to present a defense when it closed off important avenues of cross examination. Specifically, the district court stopped Mr. Dorman from asking questions going directly to the heart of his defense: that someone other than Mr. Dorman had access to 2317 Chester Street and was in possession of the firearms, ammunition, and PCP recovered at that location.

Counsel for Mr. Dorman initially sought to establish that friends of Ms. Jennings had access to her home and used the laundry area in the basement where the larger quantity of PCP was discovered.

30

This evidence would have raised an inference that whoever possessed

the larger quantity of PCP also possessed the smaller bottle, and

also possessed the firearms and ammunition to protect their drugs.

In an attempt to advance this defense, counsel engaged in the

following inquiry with Ms. Jennings:

Q. Where does Seth, Sr. do his laundry?

A. He would do it in my house.

Q. What about Seth, Jr.?

MR. ELIOPOULOS: Objection, Your Honor. Can we approach?

THE COURT: Yes.   Could you step down?

(Witness leaves the stand.)
(Bench conference.)

MR. ELIOPOULOS: Mr. McDaniel is going into what
other people may have been there. First of all, we don't
know what the time period is.
    But if he's trying to argue that other people or
certain people may have brought drugs in or guns in, I
think that's very prejudicial. I think it's at the very
least reverse 404(b) evidence. If that's what he's trying
to do.
    If he has like a good faith basis to believe that
somebody actually brought drugs in the house, that's
another issue. But if he's just trying to bring people
into the mix, I think that's highly inappropriate.

MR. MCDANIEL: The Government's position, Your Honor,
is that there's a constructive possession case and that
my client is almost an [sic] exclusive possession of this
basement area.   They've asked questions about who has
keys, so I'm asking additional questions about who has
keys and who has access to this area.
    Part of the Government's position is that it could
only be my client that had narcotics down there because
ostensibly he's the only one that had access to it,
that's just plainly wrong.

31

THE COURT: Well, except that you are eliciting very
vague testimony.

MR. MCDANIEL: I can be more specific.

THE COURT: You have to be, you have to give times
and you have to be more specific. Otherwise, I'm going to
have to tell the jury they should disregard it because
there's no foundation for it.

MR. MCDANIEL: Very well.

7/9/14:147-48.

As reflected above, the district court ruled that Mr. Dorman had
to specifically circumscribe a time frame to which his questions
referred. No rationale supported such a limitation as the time frame
was not in issue in this case. Moreover, this Court has made it
clear that "there should be great latitude for cross-examination on
issues raised in direct testimony," United States v. Stock, 948 F.2d
1299, 1302 (D.C. Cir. 1991), and questions about who had access to
2317 Chester Street were clearly raised during the Ms. Jennings's
direct testimony. By restricting questions about who had access to
Ms. Jennings's house based on concerns about the purported time
frame, the district court foreclosed critically important evidence
about who had access to the house during the obvious time period that
was the focus of trial – the time period preceding the discovery of
drugs and guns there. Furthermore, any purported ambiguity as to
the time frame to which counsel's questions referred could have
easily been clarified on re-direct examination.

32

Notwithstanding the court's erroneous ruling, once counsel attempted to establish a time frame during which others besides Mr. Dorman had access to Mr. Jennings's house, the court further restricted questioning:

> Q. Now how often was it that Seth, Sr. would do laundry at the apartment?
>
> MR. ELIOPOULOS: Objection, Your Honor.
>
> THE COURT: Sustained.

7/9/14:150. And as counsel attempted more open-ended questioning to identify others suspected of having control over items in the house, the court sua sponte interrupted counsel for Mr. Dorman with no objection having been made:

> BY MR. MCDANIEL:
> Q. Ma'am, did you ever know any other individuals to have access to your apartment? In other words, did –
>
> THE COURT: Sustained.

7/9/14:150. The Court provided no explanation for limiting the defense in this regard and the record evinces no legitimate basis for doing so. The initial time-frame concerns expressed by the court about Mr. Dorman's cross examination of Ms. Jennings clearly did not warrant the complete shut-down of the defense attempts to question her on the crucial issue of access to and control of 2317 Chester Street.

In United States v. Hodge, 19 F.3d 51 (D.C. Cir. 1994), this Court remanded for further suppression proceedings based on the trial

33

court's overbroad restriction of cross-examination of certain witnesses.  In arriving at this outcome, the court observed that "any limitations on the right of cross-examination 'beyond the typical evidentiary rules limiting its scope to the subject matter of direct examination and to matters affecting witness credibility, Fed. R. Evid. 611(b), must be justified by weighty considerations,'" (quoting United States v. Green, 670 F.2d 1148, 1154 (D.C. Cir. 1981)).  No such considerations existed here.  On the contrary, by interfering with the defense's cross-examination, the district court not only denied Mr. Dorman's right of confrontation, but effectively undermined the defense theory that someone other than Mr. Dorman had access to the areas of the house where guns, ammunition, and drugs were found and was actually the person who had been in possession of these items of contraband.

It is impossible to predict the degree to which the jury would have credited Mr. Dorman's defense if counsel had been allowed to fully cross-examine Ms. Jennings.  Mr. Dorman, however, is not required to show that the proposed line of questioning would have established a reasonable doubt.  Rather, a violation of the Sixth Amendment right to confrontation or a due process right to present a defense is harmless only if the government can establish "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Chapman v. California, 386 U.S. 18, 24

34

(1967); see also Sullivan v. Louisiana, 508 U.S. 275, 279 (1993)
(harmless error inquiry "is not whether, in a trial that occurred
without the error, a guilty verdict would surely have been rendered,
but whether the guilty verdict actually rendered in *this* trial was
surely unattributable to the error") (emphasis in original).   The
government cannot meet that high burden here where the district court
restricted Mr. Dorman's ability to identify others who had access to
2317 Chester Street and could have possessed the contraband found
there.   See United States v. Morgan, 581 F.2d 933, 939 (D.C. Cir.
1978) (reversing for new trial where evidence of defendant's drugs in
basement was circumstantial and defendant was denied opportunity to
present evidence about drug sales by a third person living in the
house).

## III. THE SEARCH WARRANT FAILED TO ESTABLISH PROBABLE CAUSE

### A.    Standard of Review

This Court resolves challenges to search warrants by deciding
whether the judicial officer who issued the warrant had a
"substantial basis for concluding that probable cause existed."
United States v. Warren, 42 F.3d 647, 652 (D.C. Cir. 1994) (citing
Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

Ordinarily, where a defendant can establish that a warrant
contains no substantial basis for probable cause, the exclusionary
rule does not apply if police officers executing the warrant

nonetheless had "good faith" belief that the warrant was properly issued. United States v. Leon, 468 U.S. at 922. However, where a defendant establishes at a hearing that a warrant's probable cause relies upon material perjury or recklessness, the warrant "must be voided" and evidence or testimony gathered pursuant to it must be excluded. Franks v. Delaware, 438 U.S. 154 (1978). Thus, a warrant that violates Franks is not subject to Leon's good-faith exception to the exclusionary rule. See United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990).

In the context of a suppression hearing, this Court reviews a district court's legal conclusions de novo and its factual findings for clear error. See United States v. Glover, 681 F.3d 411, 417 (D.C. Cir. 2012).

36

B.     Given The Material Omission And Material Falsehood
       In The Affidavit In Support Of The Search Warrant,
       There Was No Substantial Basis For Deciding That The
       Search Warrant Case Established Probable Cause.

In Franks v. Delaware, 438 U.S. 154, 171 (1978), the Supreme
Court held that in order to challenge an affidavit's validity, a
defendant "must show that (1) the affidavit contained false
statements; (2) the statements were material to the issue of probable
cause; and (3) the false statements were made knowingly and
intentionally, or with reckless disregard for the truth." United
States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988). A false
statement included in an affidavit is "material" if it is "necessary
to the finding of probable cause," Franks, 438 U.S. at 156, and
"[a]llegations of negligence or innocent mistake are insufficient."
Id. at 171. Although Franks itself concerned allegations of
affirmatively false statements included in an affidavit, its
reasoning "logically extends . . . to material omissions." United
States v. Johnson, 696 F.2d 115, 118 n.21 (D.C. Cir. 1982) (quoting
W. LaFave, Search & Seizure § 4.4 (Supp. 1982)). In cases involving
omitted facts, the defendant must show that those facts were
"material" such that their inclusion in the affidavit would defeat
probable cause. United States v. Spencer, 530 F.3d 1003, 1007 (D.C.
Cir. 2008). In such cases, "recklessness may be inferred where the
omitted information was critical to the probable cause
determination." Golino v. New Haven, 950 F.2d 864, 871 (2d Cir.
37

1991); see also Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000)
("omissions are made with reckless disregard for the truth when an
officer recklessly omits facts that any reasonable person would know
that a judge would want to know" when deciding whether to issue a
warrant).

The Franks standard is incorporated into United States v. Leon,
which concerns the good faith exception to the exclusionary rule.
Under Leon officers may rely in good faith on a warrant unless the
issuing judge "was misled by information in an affidavit that the
affiant knew was false or would have known was false except for his
reckless disregard of the truth." Leon, 468 U.S. at 923 (citing
Franks). Thus, the good faith exception to the exclusionary rule
does not apply where an officer had "no reasonable grounds for
believing that the warrant was properly issued" due to a Franks
violation. Id. at 922-23. Colkley, 899 F.2d at 300.

Appellant asserts that the affidavit in this case omitted one
material fact and included a separate statement that was materially
false. As to the first, the affidavit materially omitted that there
was a non-identification of Mr. Dorman by the victim of the Kay
Jewelers robbery, as the testimony of Agent Hanna and Detective Brown
established. 6/25/14:43, 91. Secondly, the affidavit falsely stated
that the robbery for which Mr. Dorman was wanted in York,
Pennsylvania involved the use of a rental car, as the government

38

established through its uncontested proffer during the motions

hearing.  6/25/14:87.  In light of the material omission from the

affidavit and the false statement included in the affidavit, there

was no basis for the district court to decide that the affidavit

validly established probable cause.

In reaching a contrary conclusion, the district court ruled:

> The issue is whether or not there's . . .  an omission
> knowingly and intentionally or with reckless disregard to
> the truth included by the affiant.
>     And then if there's such an omission knowingly and
> intentionally or with reckless disregard that if you set
> aside false material, in other words, if you look at the
> affidavit without the omitted information, is that
> sufficient to support probable cause? And you have to
> meet both of those.

6/25/14:107.

With regard to the material omission of the non-identification,

the court held:

> The absence of the information the Court finds is not, is
> not material in that the affidavit without that
> information is sufficient unto itself and the additional
> information that a witness, the only witness was unable
> to make an identification, either completely unable or
> for all intents and purposes hardly able to make an
> identification, I don't think is material given the
> probable cause that's in the affidavit and given the
> reasons provided by the officer for the omission of that
> information from the affidavit.

6/25/14:125.

As an initial matter, the district court applied an incorrect

standard in evaluating the impact of the material omission.  The

district court considered the question of probable cause without the

39

omission, whereas the court should have decided whether inclusion of
the omission would have negated probable cause. See Spencer, 530
F.3d at 1007 (to determine whether omission is material, court must
consider whether its "'inclusion in the affidavit would defeat
probable cause.'" (quoting United States v. Colkley, 899 F.2d at
301). This mistake alone requires remand for the district court to
apply the correct standard in deciding the materiality of the
omission as an initial matter.

The court's mistake was exacerbated by the falsehood contained
in the affidavit and the court's ruling that:

> In the affidavit it was learned a rental car, it says a
> rental was used. Mr. Scarpelli [the AUSA] altered that
> information just before the Franks hearing and then none
> of us thought to ask the Detective about it. So we'll
> just take it as a simple error. No other reason to do
> so. It's not that relevant.

6/25/14:121. Contrary to this finding, it was highly relevant that
the robbery Mr. Dorman was accused of committing in York did not have
the same modus operandus, i.e., the use of a rental car, as the
robbery of the Kay Jewelers. The basis for the search warrant in the
immediate case derived from the use of the rented Dodge Charger.
This car was linked to 2317 Chester Street, in part, because a crime
database listed this as an address for Harold Dorman, Mr. Dorman had
a warrant for what was alleged to similarly involve a rental car
robbery in York, Pennsylvania, and Mr. Dorman was alleged to match
the description of the suspect in the Kay Jewelers robbery. The

40

correct facts - that there was no rental car used in the robbery in York, Pennsylvania - when considered in conjunction with the omitted facts - that the Kay Jewelers victim did not positively identify Mr. Dorman as the robbery suspect - were material because together they actually negate probable cause in the search warrant. Officers in possession of these correct facts should have included them in the affidavit. An inference arises that officers did not include the omitted and correct facts for fear that they would jeopardize a probable cause finding. Any contrary finding by the district court was clearly erroneous.

For these reasons, this Court should reverse the district court finding that the search warrant in this case was valid, and apply the exclusionary rule to the evidence seized from 2317 Chester Street in violation of the Fourth Amendment.

41

## CONCLUSION

For the foregoing reasons, Mr. Dorman requests that this Court reverse his convictions and enter a judgment of acquittal on each count of the indictment based on the insufficiency of the evidence. Alternatively, based on the violation of his Fourth Amendment rights, Mr. Dorman requests that this Court suppress the evidence seized during execution of the search warrant in this case. Barring the above requested relief, Mr. Dorman petitions this Court to rule that the violation of his Sixth Amendment and due process rights require that he be granted a new trial.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/s/_____
Tony Axam, Jr.
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

42

## CERTIFICATE OF LENGTH

I hereby certify that the foregoing brief for appellant contains 10,308 words and does not exceed the word limit of D.C. Cir. Rule 32(a) and Fed. R. App. P. 32(a)(7).

/s/
Tony Axam, Jr.
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief and accompanying Appendices, in United States v. Harold Dorman, Cr. No. 14-3064, with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on this 3rd day of October, 2016.

Elizabeth Trosman, Chief of Appellate Division, United States Attorneys Office, who is a registered CM/ECF user at Elizabeth.Trosman@usdoj.gov, will be served by the appellate CM/ECF system as well as by hand delivery at Office of the United States Attorney for the District of Columbia, 555 Fourth Street, NW, Washington, DC 20530.

/s/
Tony Axam, Jr.
Assistant Federal Public Defender

43
